FELICIA Y SZE (State Bar No. 233441)
E-Mail:    felicia@athenelaw.com
LONG X. DO (State Bar No. 211439)
E-Mail:    long@athenelaw.com
**ATHENE LAW, LLP**
5432 Geary Blvd., #200
San Francisco, California 94121
Telephone: (415) 686-7531
Facsimile: (844) 619-8022

Attorneys for Petitioner and Plaintiff
Siskiyou Hospital, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SISKIYOU HOSPITAL, INC., dba Fairchild Medical Center, a California nonprofit public benefit corporation, on behalf of itself and its patients,<br><br>        Petitioner/Plaintiff,<br><br>      vs.<br><br>BRADLEY GILBERT, M.D., in his official capacity as the Director of the California Department of Health Care Services; the CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; SARAH COLLARD, in her official capacity as the Director of the County of Siskiyou Health and Human Services Agency; the COUNTY OF SISKIYOU, and DOES 1-20,<br><br>        Respondents/Defendants. | Case No. 2:20-CV-00487-TLN-DMC<br><br>**FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE (CCP § 1085) AND COMPLAINT**<br><br>Judge:  The Honorable Troy L. Nunley |

## I.     __INTRODUCTION__

1.     By this First Amended Verified Petition for Writ of Mandate and Complaint ("Petition"), Siskiyou Hospital, Inc., dba Fairchild Medical Center ("Fairchild") seeks to secure timely, medically necessary mental health services for some of the most vulnerable and underserved patients in rural northern California.  Local law enforcement or other officials in the County of Siskiyou ("County") often bring individuals in their custody with mental health emergencies to Fairchild's emergency medicine department, where Fairchild must accept them under state and federal laws.  These individuals are indigent and/or enrollees in California's Medicaid program, known as Medi-Cal.  To the extent necessary, Fairchild provides emergency medical care within its capabilities to address any physical emergency conditions suffered by the patients, but it cannot provide all of the medically necessary mental health care services that the patients need.  Fairchild is neither equipped nor staffed to provide such services.  The County, however, does not provide these services or arrange the transfer of these patients to an appropriate psychiatric care provider in a timely manner to receive mental health care services or opt to provide services to treat the underlying behavioral health condition.  Rather, the patients remain in Fairchild's emergency department (often under constant security for their own safety and the safety of the medical staff and other patients and at much cost to Fairchild) for unduly long periods of time, sometimes days, without receiving any mental health treatment for the emergency/urgent condition.  The County refuses reimbursement to Fairchild for the care it is able to provide and has provided related to these patients' mental health conditions.

2.     The County's failure to timely arrange for and/or pay for mental health care services for its indigent and Medi-Cal residents is unjustifiable given that state funds through the Medi-Cal program, administered by the California Department of Health Care Services ("DHCS"), have been allocated to the County in order to provide such services specifically to these patients in need.  The County's actions and neglect alleged herein violate the authority under which it purports to hold these individuals involuntarily, as well as numerous obligations that arise from the County's contract with DHCS for the allocation of Medi-Cal funds and other independent state and federal laws that require the County to provide mental health care services

1  to indigent individuals and Medi-Cal enrollees.  The County is obligated by these contractual and

2  legal requirements to provide or ensure that patients experiencing emergency or urgent behavioral

3  health conditions have immediate access to care, commensurate with the accessibility that patients

4  with physical health issues have.

5  **II.      JURISDICTION AND VENUE**

6        3.      The Court has removal jurisdiction over this action pursuant to 28 U.S.C. §

7  1441(c).

8        4.      The Eastern District of California is an appropriate venue for this Petition as it is

9  the district in which the Respondents/Defendants reside and it is the district in which the injury

10  that gives rise to this Petition and Complaint arose in Siskiyou County.  28 U.S.C. § 1391(b)(1),

11  (2).

12  **III.     THE PARTIES**

13        5.      Petitioner Siskiyou Hospital, Inc., dba Fairchild Medical Center is a California

14  nonprofit public benefit corporation.  It is licensed to operate a 25-bed general acute care hospital

15  located in Yreka, California.  It is one of two hospitals located in the County, with the other

16  hospital being located approximately 37 miles away near Mount Shasta.  Fairchild has an

17  emergency medicine department that provides emergency services to the public.  Fairchild brings

18  this Petition on behalf of itself and on behalf of its patients.

19        6.      Fairchild seeks to compel compliance with legal and contractual obligations that

20  between DHCS and the County have a direct impact on its hospital.  Due to the County's actions

21  and neglect alleged herein, Fairchild has had to divert staff resources and equipment and incurred

22  significant financial costs as a result of the County's failure to comply with its obligations.

23  Fairchild has a direct and beneficial interest in the subject of this Petition.

24        7.      Fairchild also seeks to assert and enforce rights to mental health care services to

25  which its patients are entitled but which are being deprived by the County. *See Lewis v. Super. Ct.*,

26  3 Cal.5th 561 (2017).  Fairchild's interests are aligned with and inextricably bound up with the

27  interests of its patients over their rights to mental health care services.  Fairchild's patients,

28

1 however, cannot assert their own interests, making it necessary for Fairchild to assert third-party

2 standing.

3     8.     Respondent/Defendant Bradley Gilbert, M.D. is the Director of DHCS, the agency

4 charged with administering and enforcing the provisions of the Medi-Cal program.  He is

5 substituted for Richard Figueroa, who is no longer acting as the Director of DHCS.  He is sued in

6 his official capacity. Petitioner and Plaintiff is informed and believes that Dr. Gilbert performs his

7 duties in Sacramento, California.

8     9.     Respondent/Defendant DHCS administers a number of healthcare programs,

9 including the Medi-Cal program.  Respondent/Defendant DHCS resides in Sacramento,

10 California.

11     10.     Respondent/Defendant Sarah Collard is the Director of the County of Siskiyou

12 Health and Human Services Agency.  She is sued in her official capacity.  Ms. Collard performs

13 her duties in Siskiyou County, California.

14     11.     Respondent/Defendant County of Siskiyou is a political subdivision of the State of

15 California.  Pursuant to a contract with DHCS and applicable federal and state authorities, the

16 County acts as the mental health plan for Medi-Cal beneficiaries residing in the County of

17 Siskiyou.  In its role as the county mental health plan, the County must provide, or arrange and

18 pay for, all medically necessary specialty mental health services.

19     12.     The true names and capacities of the respondents and defendants sued herein as

20 Does l through 20, inclusive (hereinafter, the "Does" or the ''Doe Respondents/Defendants"), are

21 unknown to Petitioner at this time, and therefore are sued by such fictitious names.  Petitioner will

22 amend this Petition and Complaint to allege the true names and capacities of these Does when

23 they have been ascertained.  Petitioner is informed and believes that each of the defendants

24 designated as a Doe is responsible in some manner for the events and happenings herein alleged,

25 as well as for the injuries or damages alleged.

26     13.     Petitioner is informed and believe that each of the Respondent/Defendants were, at

27 all times relevant hereto, the agent, employee, alter ego or representative of the remaining

28 Respondents/Defendants, and was acting at least in part within the course and scope of such

1 relationship.  All actions of each of the Respondents/Defendants herein alleged were ratified

2 and/or approved by the officers, directors or managing agents of every other defendant.

3      14.    Respondent/Defendants Gilbert and DHCS are referred to herein as "DHCS

4 Respondents/Defendants."  Respondent/Defendants Collard and the County are referred to herein

5 as "County Respondents/Defendants."

6 **IV.   STATUTORY AND REGULATORY BACKGROUND**

7     A.    **WELFARE AND INSTITUTIONS CODE SECTION 5150 AUTHORITY**

8          **GRANTED TO COUNTIES**

9      15.    "The Lanterman-Petris-Short Act is intended to provide prompt, short-term,

10 community-based intensive treatment, without stigma or loss of liberty, to individuals with mental

11 disorders who are either dangerous or gravely disabled…. When involuntary intensive treatment is

12 indicated, the LPS Act authorizes the detention of mentally disordered persons for a 72–hour

13 treatment and evaluation." *Ford v. Norton*, 89 Cal.App.4th 974, 977 (2001).  "One of the

14 purposes of the Act is to provide 'prompt evaluation and treatment of persons with mental health

15 disorders or impaired by chronic alcoholism.'" *Julian v. Mission Community Hospital*, 11

16 Cal.App.5th 360, 374-75 (2017).

17      16.    "Welfare and Institutions Code section 5150 permits peace officers and specified

18 mental health professionals to take a person into custody if the peace officer or mental health

19 professional has probable cause to believe the person is a danger to himself or others.  **Custody**

20 **under section 5150 must be in a designated mental health facility and may not exceed 72**

21 **hours**.  The person who is in custody must be assessed by the facility prior to admission and, if

22 admitted, evaluated under the direction of a mental health professional." *City of San Diego v.*

23 *Kevin B.*, 118 Cal. App. 4th 933, 936 (2004) (emphasis added).  It states, in relevant part:

24         When a person, as a result of a mental health disorder, is a danger to
        others, or to himself or herself, or gravely disabled, a peace officer,

25         professional person in charge of a facility designated by the county
        for evaluation and treatment, member of the attending staff, as defined

26         by regulation, of a facility designated by the county for evaluation and
        treatment, designated members of a mobile crisis team, or

27         professional person designated by the county may, upon probable
        cause, take, or cause to be taken, the person into custody for a period

28         of up to 72 hours for assessment, evaluation, and crisis intervention,

> or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services. At a minimum, assessment, as defined in Section 5150.4, and evaluation, as defined in subdivision (a) of Section 5008, shall be conducted and provided on an ongoing basis. Crisis intervention, as defined in subdivision (e) of Section 5008, may be provided concurrently with assessment, evaluation, or any other service.

17.    Fairchild is not licensed to provide an acute-level psychiatric service.  It is not a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services.  In other words, Welfare and Institutions Code section 5150 does not contemplate peace officers or any professional persons designated by the county to take or cause to be taken a person into custody at Fairchild.  Instead, custody occurs under the authority of peace officers, county officials, or designated facilities.

18.    The "holding" of patients at Fairchild violates the legislative intent in Welfare and Institutions Code section 5150 to permit detaining an individual for the purpose of evaluating **and treating** the underlying mental health condition because patients do not receive treatment at Fairchild.  *See Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 375 (2017), as modified on denial of reh'g (May 23, 2017) (describing section 5150 as allowing "law enforcement officers and various medical professionals to bring an individual to an appropriate facility for assessment, evaluation, **and treatment**") (emphasis added); *Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1493 (2005) ("Section 5150 authorizes a 72–hour detention of any person … in order to provide for **treatment** and evaluation.") (emphasis added).  Welfare and Institutions Code section 5150 does not authorize "holding" a patient at a location that is not capable of providing actual treatment to the patient.  *Compare* Welf. & Inst. Code § 5150.1 (prohibiting county mental health personnel from instructing a peace officer to keep an individual in jail, forbidding the peace officer from transporting the individual to a designated facility, or preventing a peace officer from entering a designated facility with the person to be assessed).  Fundamental to the authority under Welfare and Institutions Code section 5150 is that the county actually provide therapeutic treatment to the patient for the underlying mental health conditions during the 72-hour period.

19.    The Legislature also enunciated its expectation that a person under detainment

1    receive treatment in its definition of "crisis intervention," which is also explicitly required under

2    Welfare and Institutions Code section 5150.  Specifically, "[c]risis intervention consists of an

3    interview or series of interviews within a brief period of time, conducted by qualified

4    professionals, and designed to alleviate personal or family situations which present a serious and

5    imminent threat to the health or stability of the person or the family.  **The interview or interviews**

6    **may be conducted** in the home of the person or family, or **on an inpatient or outpatient basis**

7    **with such therapy, or other services, as may be appropriate**.  The interview or interviews may

8    include family members, significant support persons, providers, or other entities or individuals, as

9    appropriate and as authorized by law.  **Crisis intervention may, as appropriate, include suicide**

10    **prevention, psychiatric, welfare, psychological, legal, or other social services.**"  Welf. & Inst.

11    Code § 5008(e).  In other words, when a patient is at an inpatient or outpatient location, such as

12    the emergency department at Fairchild, crisis intervention must include therapy as appropriate.

13    Other types of crisis intervention, such as suicide prevention or psychiatric care, may also be

14    provided.

15        B.    **MEDICAID AND FEDERAL LAWS GOVERNING THE PROVISION OF**

16            **MENTAL HEALTH SERVICES**

17        20.    Established under title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.),

18    the federal Medicaid program provides funds to the states to defray the cost of medical care for

19    qualified low-income persons.  California participates in Medicaid, and its program is called

20    "Medi-Cal."  *See* Welf. & Inst. Code §§ 14000, et seq.; 22 Cal. Code of Regs. ("CCR") §§ 50000,

21    *et seq.*  DHCS is the state agency exclusively charged with administering the Medi-Cal program.

22        21.    Under the Medicaid Act, states implement and administer their Medicaid programs

23    through federally-approved state Medicaid plans. Federal law requires every state Medicaid plan

24    to comply with various requirements, including:

25    • A state Medicaid plan must provide for making medical assistance available to all

26        eligible individuals.  42 U.S.C. § 1396a(a)(10)(A).

27    • A state Medicaid plan must "provide that all individuals wishing to make application

28        for medical assistance under the plan shall have the opportunity to do so, and that such

7

FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE (CCP § 1085) AND COMPLAINT

assistance shall be furnished **with reasonable promptness** to all eligible individuals."

42 U.S.C. § 1396a(a)(8) (emphasis added).  The federal agency tasked with

implementing the Medicaid program, the Centers for Medicare and Medicaid Services

("CMS"), has interpreted this "reasonable promptness" requirement to require a state

Medicaid agency to "[m]ake arrangements to assist applicants and beneficiaries to get

emergency medical care whenever needed, **24 hours a day and 7 days a week**."  42

C.F.R. § 435.930(c) (emphasis added). Emergency medical care includes services to

address mental health emergency conditions.

22.    Among the services that a State must provide pursuant to 42 U.S.C. section 1396a

(a)(10) are "[e]arly and periodic screening, diagnostic, and treatment services … for individuals

who are eligible [for Medicaid] and are under the age of 21[.]"  42 U.S.C. §§ 1396a(a)(43)(C),

1396d(b)(4)(B); *see Katie A., ex rel. Ludin v. Los Angeles Cty*., 481 F.3d 1150, 1154 (9th Cir.

2007).  Among the early and periodic screening, diagnosis and treatment ("EPSDT") services that

a State must provide are: (1) screening services which are provided "at such other intervals,

indicated as medically necessary, to determine the existence of certain physical or mental illnesses

or conditions;" and (2) "other necessary health care, diagnostic services, treatment, and other

measures described in subsection (a) to correct or ameliorate defects and physical and mental

illnesses and conditions discovered by the screening services, whether or not such services are

covered under the State Plan."[1]  42 U.S.C. § 1396d(r)(1), (5).  "The EPSDT obligation is thus

extremely broad. [CMS] has described EPSDT as a 'comprehensive child health program of

prevention and treatment.'"  *Katie A., ex rel. Ludin v. Los Angeles Cty*., 481 F.3d 1150, 1154 (9th

Cir. 2007), quoting CMS, U.S. Dep't of Health & Human Servs., Pub. No. 45, State Medicaid

Manual § 5010(B).  The State "must ensure that EPSDT services provided are reasonably

**effective**[,]" i.e., sufficient "to achieve their purpose."  *Id.* at 1159, quoting CMS, U.S. Dep't of

Health & Human Servs., Pub. No. 45, State Medicaid Manual § 5110 (emphasis added).

23.    Federal and state laws further prohibit the State and County from implementing the

---

[1] 42 U.S.C. section 1396d(a) defines "medical assistance" as "payment of part or all of the cost of the following care and services or the care and services themselves, or both…."

1    Medi-Cal specialty mental health system in a manner that discriminates against persons by virtue

2    of having a mental disability.

3        24.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, constrains the way

4    states may implement their Medicaid programs, prohibiting discrimination based on a disability

5    (including mental health conditions) in the provision of medical care.  Such prohibition on

6    discrimination based on disability (including mental health conditions) also applies to recipients of

7    federal funding, like the County.  Section 504 provides that "[n]o otherwise qualified individual

8    with a disability . . . shall, solely by reason of her or his disability, be excluded from the

9    participation in, be denied the benefits of, or be subjected to discrimination under any program or

10   activity receiving Federal financial assistance." 29 U.S.C. § 794.  A "state may not provide an

11   otherwise qualified individual with a disability with health benefits or services that are not as

12   effective as those provided to others[]. Nor may it adopt criteria or methods of administration that

13   have the purpose or effect of defeating or substantially impairing accomplishment of the objective

14   of the recipient's program with respect to the [disabled]. [] The state accordingly must afford

15   individuals with a disability meaningful and equal access to the Medicaid benefits or services

16   offered to those without a disability and may be required to adjust its programs to achieve that

17   result." *Wolford by Mackey v. Lewis*, 860 F. Supp. 1123, 1135 (S.D.W. Va. 1994) (internal

18   quotations omitted) (citations omitted).

19       25.    The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and its

20   implementing regulations ("ADA") provide that "no qualified individual with a disability shall, by

21   reason of such disability be excluded from participation or be denied of the benefits of the

22   activities, services, programs, or activities of a public entity, or be subjected to discrimination by

23   any such entity."  28 C.F.R. § 35.130(a); *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th

24   Cir. 2002).  For example, a public entity cannot:

25   •   Deny a qualified individual with a disability the opportunity to participate in or benefit

26       from the aid, benefit, or service;

27   •   Afford a qualified individual with a disability an opportunity to participate in or benefit

28       from the aid, benefit, or service that is not equal to that afforded others;

9

- Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

- Limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service; or

- Utilize criteria of administration that have the effect of substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

28 C.F.R. § 35.130(a).

26.    In addition, the ADA further imposes an integration mandate. *Olmstead v. Zimring*, 527 U.S. 581, 592 (1999). Specifically, 28 C.F.R. section 35.130(d) states: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."

27.    California Welfare and Institutions section 11135 provides that "[n]o person in the State of California shall, on the basis of… mental disability… be unlawfully denied full and equal access to the benefits of … any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." This provision provides at least the same level of protection against disability discrimination as the federal Americans with Disabilities Act and its implementing regulations. Welf. & Inst. Code § 11135(b).

28.    Federal law incorporates and applies various requirements applicable to group health insurance plans on Medicaid managed care plans too. *See* 42 U.S.C. § 1396u-2(b)(8). In other words, states that implement Medicaid through the managed care model must ensure that their contracted managed care plans comply with these group health insurance plan requirements.

29.    The Mental Health Parity and Addiction Equity Act of 2008, 42 U.S.C. § 300gg–26, ("MHPAEA") applies to managed care plans contracted with states to implement Medicaid programs. The MHPAEA applies to health insurance plans that cover "both medical and surgical benefits" and "mental health or substance use disorder benefits." 42 U.S.C. § 300gg–26(a). State

Medicaid managed care plans that cover both forms of benefits must ensure that:

> the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

*Id.* § 300gg–26(a)(3)(A)(ii).  The MHPAEA protections apply to all benefits provided to Medicaid managed care enrollees, even if the State carves out certain benefits, like specialty mental health services to a separate managed care entity.  42 C.F.R. § 438.920(a); 81 Fed. Reg. 18309, 18410, 18411 (Mar. 30, 2016).

## C.   DHCS' IMPLEMENTATION OF MENTAL HEALTH BENEFITS THROUGH MEDI-CAL MANAGED CARE

30.    One way DHCS administers Medi-Cal is through the fee-for-service program, where payments for Medi-Cal covered services are paid to a provider based on actual services rendered.  Another way DHCS administers Medi-Cal is by contracting with and paying Medi-Cal funds to various managed care plans who assume the responsibility to provide, pay for, or arrange covered medical services to be provided to Medi-Cal enrollees.

31.    For example, DHCS contracts with physical health plans, like Partnership Health Plan in Siskiyou County, to coordinate primarily physical health services.  Fairchild is informed and believes that DHCS' contract with Partnership Health Plan specifies that the physical health plan cover outpatient mental health services, i.e., outpatient services for patients with mild to moderate mental health conditions requiring services not covered by a county mental health plan. In addition, Fairchild is informed and believes that Partnership Health Plan is responsible to cover behavioral health services that are within the scope of practice of a primary care physician. Fairchild is informed and believes that the DHCS carves out "specialty mental health services" from the scope of services for which physical health plans are financially responsible.

32.    DHCS also contracts with counties to provide or arrange for behavioral health services for patients with severe mental health diagnoses.  Welf. & Inst. Code § 14712(a). Welfare and Institutions Code section 14712(c) requires DHCS to "contract with a county or counties

11

1    acting jointly for the delivery of specialty mental health services to each county's eligible Medi-

2    Cal beneficiary population."  These patients are identified by their meeting "medical necessity"

3    criteria as identified in California Code of Regulations, title 9, sections 1820.205, 1830.205, or

4    1830.210.

5          33.      The Department delegates specialty mental health care services ("SMHS") to

6    county mental health plans subject to a waiver granted under section 1915(b) of the Social

7    Security Act by the Centers for Medicare and Medicaid Services, effective from July 1, 2015,

8    through June 30, 2020.  Consistent with federal law, the 1915(b) waiver describes SMHS to be

9    covered through Medi-Cal, including both emergency and nonemergency mental health services.

10   In order to receive approval from CMS, the Department "assure[d] CMS that services under the

11   Waiver Program will comply with … [a]ccess to emergency services" per 42 U.S.C. § 1396u-

12   2(b)(2) and 42 C.F.R. section 438.114, as discussed in paragraphs 38-40.

13         34.      The County, operating as the Siskiyou County Behavioral Health plan, has entered

14   into such a contract with DHCS to provide SMHS to all Medi-Cal beneficiaries in Siskiyou.

15   Petitioner/Plaintiff are informed and believe that pursuant to the County's contract with DHCS,

16   the County has agreed to "provide, or arrange and pay for" specified specialty mental health

17   services.  Cal. Code Regs., tit. 9, § 1810.345(a).

18         35.      Many county mental health plans elect to provide emergency or crisis services to

19   their Medi-Cal residents who are suffering from severe behavioral health diagnoses.  Some

20   counties operate psychiatric hospitals, psychiatric emergency departments, psychiatric health

21   facilities, crisis stabilization units, sobering centers, crisis intervention, partial hospitalization,

22   intensive outpatient, early or other types of service lines to treat the various types of emergency or

23   urgent conditions that their Medi-Cal residents may face.  They do so to meet their obligations as

24   county mental health plans to provide or arrange and pay for specialty mental health services.

25   Fairchild is informed and believes that the County of Siskiyou has elected to not provide any

26   services targeted to treat their residents' emergency or urgent psychiatric conditions, such as

27   medical management, crisis stabilization, or the services of a licensed mental health professional

28   such as a psychiatrist, psychologist, or therapist.

D.    **COUNTY MENTAL HEALTH PLAN OBLIGATIONS**

36.    As a county mental health plan, the County incurs various obligations pursuant to law, regulation or contract.

37.    Access to specialty mental health services. For example, the County must ensure that Medi-Cal beneficiaries actually have access to specialty mental health services.  Cal. Code Regs., tit. 9, § 1810.405(a).  The County also is required to make "specialty mental health services available 24 hours a day, seven days a week." *Id.* at § 1810.405(c).  Fairchild is informed and believes that, consistent with state law and regulations, the County is obligated by its contract with the State to ensure access to specialty mental health services 24 hours a day, 7 days a week, when medically necessary.  Specialty mental health services include post-stabilization services.  Cal. Code Regs., tit. 9, § 1810.345(e).  Specialty mental health services also include psychiatric inpatient hospital services, psychiatrist services, psychologist services, crisis intervention services (which include assessment, collateral and therapy), crisis stabilization services, and psychiatric health facility services.  Nothing in state or federal law excuses the County from ensuring access to specialty mental health services, including immediate access to emergency mental health services, simply because the County decides to not provide such services or have a sufficient network to serve its residents.

38.    Emergency and post-stabilization services.  The County is further required to cover both emergency and post-stabilization services pursuant to 42 U.S.C. section 1396u-2(b)(2), 42 C.F.R. section 438.114, and California Code of Regulations, title 9, section 1810.345(e). These federal provisions apply to, among others, prepaid inpatient health plans ("PIHP"). A PIHP is defined in 42 C.F.R. section 438.2 as an "entity that-- ¶ (1) Provides services to enrollees under contract with the State, and on the basis of capitation payments, or other payment arrangements that do not use State plan payment rates. ¶ (2) Provides or arranges for, or otherwise has responsibility for the provision of any inpatient hospital or institutional services for its enrollees; and ¶ (3) Does not have a comprehensive risk contract."  Prepaid inpatient health plans are a form of Medicaid managed care. The County is a PIHP and accordingly must provide coverage for emergency services without regard to prior authorization and cover and pay for post-stabilization

1   care services in accordance with provisions set forth at 42 C.F.R. section 422.113(c).

2         39.     Federal regulations require that PIHPs cover emergency and post-stabilization

3   services, as follows:

4              (1) Definition. Post-stabilization care services means covered
               services, related to an emergency medical condition, that are
5              provided after an enrollee is stabilized in order to maintain the
               stabilized condition, or, under the circumstances described in
6              paragraph (c)(2)(iii) of this section, to improve or resolve the
               enrollee's condition.
7
               (2) MA organization financial responsibility. The MA organization -
8
               (i) Is financially responsible (consistent with § 422.214) for post-
9              stabilization care services obtained within or outside the MA
               organization that are pre-approved by a plan provider or other MA
10             organization representative;

11             (ii) Is financially responsible for post-stabilization care services
               obtained within or outside the MA organization that are not pre-
12             approved by a plan provider or other MA organization representative,
               but administered to maintain the enrollee's stabilized condition within
13             1 hour of a request to the MA organization for pre-approval of further
               post-stabilization care services;
14
               (iii) Is financially responsible for post-stabilization care services
15             obtained within or outside the MA organization that are not pre-
               approved by a plan provider or other MA organization representative,
16             but administered to maintain, improve, or resolve the enrollee's
               stabilized condition if -
17
               (A) The MA organization does not respond to a request for pre-
18             approval within 1 hour;

19             (B) The MA organization cannot be contacted; or

20             (C) The MA organization representative and the treating physician
               cannot reach an agreement concerning the enrollee's care and a plan
21             physician is not available for consultation. In this situation, the MA
               organization must give the treating physician the opportunity to
22             consult with a plan physician and the treating physician may continue
               with care of the patient until a plan physician is reached or one of the
23             criteria in § 422.113(c)(3) is met….

24
    This obligation is reinforced by California Code of Regulations, title 9, section 1810.345(e),
25
    which requires county mental health plans to be "financially responsible for post-stabilization
26
    care services obtained within or outside of the mental health plan's provider network that are
27
    provided in compliance with title 42 CFR section 422.113(c)(1)-(3)."
28

40.     The publicly accessible version of this contract between DHCS and county mental health plans available online prior to June 2018 explicitly required that counties like the County of Siskiyou "shall pay for services for emergency psychiatric conditions received by a beneficiary from providers, whether or not the provider has a subcontract with the Contractor." That contract also required the County of Siskiyou to "comply with 42 C.F.R. § 438.114, regarding emergency, post stabilization services." Fairchild is informed and believes that sometime after the dates of service at issue in this action and after Fairchild raised the issues in this Petition to the County in the first instance, the State and the County of Siskiyou amended their contract to omit the relevant portions. Such amendments, if any, may not be applied retroactively to the specific claims at issue in this case.

41.     <u>Network of providers.</u>  California law requires a Medi-Cal managed care plan, including the County's mental health plan, to maintain a network of providers that can provide covered services meeting specified time and distance standards. *See* Welf. & Inst. Code § 14197. For hospital services, including SMHS, the requirement is availability within 15 miles or 30 minutes from the beneficiary's place of residence. Welf. & Inst. Code § 14197(b)(2). DHCS retains responsibility to implement and ensure compliance with these time and distance requirements.

42.     Fairchild is informed and believes that the County has not sought or obtained alternative access standards from DHCS and yet has not satisfied the statutory time and distance standards.

43.     Fairchild is informed and believes that the County has not established a contractual relationship with any hospital or other facility licensed to render psychiatric inpatient services within 250 miles of Yreka, California. Fairchild is further informed and believes that the County has not paid for psychiatric inpatient services with any general acute care hospital within 250 miles of Yreka, California to provide specialty mental health services in fiscal year 2016-17.

44.     Fairchild is informed and believes that acute psychiatric inpatient services are available approximately 50 miles away in Medford, Oregon, and approximately 90 miles away in Redding, California. Many county mental health plans, excluding the County, operate their own

1  psychiatric health facilities or crisis stabilization units to ensure that behavioral health patients

2  needing urgent or emergency level care have 24 hour a day/7 day a week access to care.  Fairchild

3  is informed and believes that the County does not.

4    45.    In the absence of an adequate network, federal law requires that a PIHP adequately

5  and timely cover services out of network, "for as long as the [PIHP's] provider network is unable

6  to provide them."  42 C.F.R. § 438.206(b)(4).

7    46.    <u>Care coordination.</u>  A county mental health plan "shall arrange appropriate

8  management of a beneficiary's care… with a beneficiary's other health care provider or providers

9  of specialty mental health services."  Cal. Code Regs., tit. 9, § 1810.415(b); *see also id.* at §

10  1810.345(a).

11    **E.    COUNTY OBLIGATION TO PROVIDE EMERGENCY SERVICES TO**

12    **INDIGENT PERSONS**

13    47.    Separate from a county's obligations to Medi-Cal beneficiaries, Welfare and

14  Institutions Code section 17000 requires that "[e]very county… shall relieve and support all

15  incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully

16  resident therein, when such persons are not supported and relieved by their relatives or friends, by

17  their own means, or by state hospitals or other state or private institutions."  Courts have

18  interpreted this mandate as making counties "providers of last resort" for the indigent, requiring

19  counties to provide and fund "medically necessary" care for all indigent persons not eligible for

20  any other type of public assistance, welfare, or relief program, such as Medi-Cal.  *Alford v. County*

21  *of San Diego*, 151 Cal.App.4th 16, 30 (2007); *Hunt v. Super. Ct.*, 21 Cal.4th 984 (1999).

22  "'[C]ounties have no discretion to refuse to provide medical care to 'indigent persons' within the

23  meaning of section 17000 who do not receive it from other sources.'… Not only must an indigent

24  be provided with emergency and medically necessary care, the county must relieve the indigent of

25  the cost of such care."  *Fuchino v. Edwards-Buckley*, 196 Cal.App.4th 1128, 1134 (2011).

26  **V.    THE COUNTY'S FAILURE TO PROVIDE OR ARRANGE FOR TREATMENT**

27    **FOR RESIDENTS WITH SEVERE MENTAL HEALTH DIAGNOSES**

28    48.    There are no hospitals or psychiatric health facilities in the County that can provide

1   emergency or nonemergency mental health services.  The County has declined to provide

2   treatment options for emergency/urgent mental health conditions, such as crisis stabilization

3   services, psychiatric health facility services, or a sobering center.

4       49.    However, Fairchild operates an emergency medicine department that is obligated to

5   receive all patients who present with any emergency medical condition, including emergency

6   mental conditions.  Fairchild sees approximately 200-300 patients a year who present to its

7   emergency medicine department with such emergency mental conditions.  These patients are

8   brought to Fairchild by the County or local law enforcement officers after a determination under

9   Welfare and Institutions Code section 5150 that the patients have severe mental health diagnoses

10   and are a danger to themselves or to others.  Such patients are indigent or are Medi-Cal

11   beneficiaries.  Indeed, Fairchild is informed and believes that the County publicly encourages

12   patients experiencing a behavioral health crisis to seek care from Fairchild's emergency

13   department.

14       50.    In calendar year 2018, Fairchild received 310 patients in its emergency room,

15   whom the County had determined to be a danger to themselves or to others.  Nearly all of these

16   patients were either enrolled in Medi-Cal or indigent.  Of these 310 patients, 66 patients were

17   transferred to inpatient psychiatric facilities.  The average length of stay at Fairchild for these

18   patients before transfer was 20.21 hours, meaning that on average, these patients waited nearly an

19   entire day prior to receiving medically necessary psychiatric care to treat the emergency

20   psychiatric condition.  Eighteen of these patients spent more than an entire day awaiting transfer;

21   one patient waited for nearly three days (approx. 61 hours) before the County effectuated transfer

22   to an inpatient psychiatric facility.  Such delays constitute denial of meaningful access to

23   medically necessary treatment of the underlying psychiatric condition.

24       51.    For the remaining 124 patients, the County did not effectuate a transfer to a

25   psychiatric facility or outpatient facility that could address a psychiatric emergency or crisis for

26   fewer than 24 hours (like a crisis stabilization unit or sobering center) – despite the County's own

27   determination that the patients were a danger to themselves or others.  These patients were

28   generally discharged to a location other than a psychiatric facility, e.g., home.

52.     Fairchild is informed and believes that while the County may send unlicensed personnel to the hospital to interview and evaluate the patients (and re-certify additional holds under Welfare and Institutions Code section 5150 should the stay exceed 72 hours), the County does not provide treatment therapy, e.g., medical management, crisis stabilization, or the services of a licensed mental health professional such as a psychiatrist, psychologist, or therapist, while the patient is at Fairchild.

53.     Upon stabilization of each Medi-Cal or indigent patient's physical medical status, Fairchild provided notice to the County Respondents/Defendants that the patient was stable and could be safely transferred to another facility where the patient could receive SMHS by qualified professionals.  Pursuant to this notice, Fairchild requested immediate transfer of the patient for appropriate psychiatric care.  In the alternative, Fairchild notified the County Respondents/Defendants of its expectation that the County would pay for any resulting post-stabilization care.

54.     The County Respondents/Defendants did not respond in the normal course of business to these notices provided by Fairchild.  Despite receiving these notices, the County continued to delay the provision of or arrangement for treatment for these patients' behavioral health conditions, forcing Fairchild to continue to "house" the patients to Fairchild's at its patients' detriment.  For example, Fairchild incurred costs and risked the safety of its employees by continuing to "house" these patients; at the same time, these patients faced unconscionable delays before receiving needed emergency/urgent level psychiatric treatment.

55.     Instead, on February 1, 2017, an attorney with the County sent a correspondence to Fairchild to respond to the notices sent from Fairchild.  The attorney declined any responsibility by the County for the services rendered, instead suggesting that: "The beneficiary of the services rendered is not the Agency.  Though as a practical matter, most of the persons who find themselves subject of a section 5150 referral are indigent, in principle, your facility could bill them or their insurance for services rendered."

56.     In the ordinary course of business, Fairchild submitted claims for payment to the County Respondents/Defendants.  These claims included charges for the costs incurred by

FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE (CCP § 1085) AND COMPLAINT

1   Fairchild in receiving patients requiring emergency-level psychiatric care, such as security costs,

2   and room and board costs.  The County Respondents/Defendants denied each and every claim for

3   payment.  The County Respondents/Defendants did so knowing that they avoided paying for

4   medically necessary specialty mental health services (e.g., inpatient psychiatric services or crisis

5   stabilization services) by leaving patients at Fairchild either until they were finally transferred or

6   until their mental health emergencies subsided without treatment.

7      57.    On July 9, 2018, Fairchild submitted a letter/claim for money to the Siskiyou

8   County Health and Human Services Agency and the Board of Supervisors requesting payment for

9   services it had rendered to patients in need of SMHS with dates of service from April 1, 2017,

10  through June 19, 2018, for approximately $85,000.

11     58.    On August 24, 2018, the County wrongfully denied the claims for timeliness, both

12  by applying a six-month limitations period that is inapplicable to claims for money due and by

13  commencing its calculation of the limitations period on the dates of service, not the dates that the

14  claims were denied.  The County claimed to have granted Fairchild's request to present a late

15  claim under the Government Claims Act on January 7, 2019.

16     59.    The County ultimately rejected the claims on January 14, 2019, disavowing any

17  responsibility to pay for the services rendered by Fairchild.  On January 15, 2019, the County

18  provided notice of this rejection, granting Fairchild six months to file suit.

19     60.    On July 10, 2019, the County and Fairchild entered into a tolling agreement, which

20  the parties extended in writing on September 23, 2019.  By the terms of the tolling agreement and

21  the amendment, the County and Fairchild agreed that Fairchild would not file suit against the

22  County from the period from July 10, 2019, and December 7, 2019, and that any statutes of

23  limitations or other time-based defenses will be tolled during the period from July 10, 2019,

24  through December 7, 2019.

25     61.    The course of events described in this Petition arise from the

26  Respondents/Defendants' failure to ensure that the patients at Fairchild receive timely mental

27  health treatment for their mental health conditions.  This results in injury to the patients, such as,

28  without limitation: (1) delays or lack of access to mental health treatment; (2) risk to their physical

1  and mental well-being due to the lack of prompt mental health care; and (3) being instructed by

2  the County to remain at Fairchild, which is not a designated facility that can provide treatment for

3  their mental health conditions.  Fairchild is likewise injured by the Respondents/Defendants'

4  actions or inactions, in the following ways, without limitation: (1) incurring costs to house and

5  provide care for the patients; (2) being forced to house patients for which it cannot care in its

6  emergency department, which reduces its ability to provide services to patients presenting with

7  physical health conditions; and (3) strain and risk to its staff and physicians resulting from

8  behavioral health patients that it does not have the capacity to serve.

9  **CAUSES OF ACTION**

10  **First Cause of Action**

11  Writ of Mandate under California Code of Civil Procedure § 1085

12  Petitioner against all Respondents/Defendants

13  (To Compel Compliance with 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8)) [failure to provide

14  care with reasonable promptness])

15       62.     Fairchild realleges and incorporates by reference each and every allegation

16  contained in the above paragraphs as though fully set forth herein.

17       63.     The Medicaid Act requires the County Respondents/Defendants and the DHCS

18  Respondents/Defendants to ensure that Medi-Cal beneficiaries receive services with reasonable

19  promptness.  This means access to "emergency medical care whenever needed, 24 hours a day and

20  7 days a week." (42 C.F.R. § 435.930(c).)

21       64.     Medi-Cal patients present to Fairchild who require emergency medical care to

22  address a psychiatric condition do not have access to emergency care whenever needed.  By its

23  contract with the DHCS, the County Respondents/Defendants must make emergency care

24  available with reasonable promptness (24 hours a day and 7 days a week) to all Medi-Cal patients

25  within the County.  Instead, the County Respondents/Defendants fail to make care for the

26  emergency psychiatric conditions (such as medical management, crisis stabilization, the services

27  of a licensed mental health professional such as a psychiatrist, psychologist, or therapist, or

28  inpatient psychiatric care) available to the patients brought to Fairchild available for days and

20

sometimes weeks.  The County Respondents/Defendants failed to comply with, and the DHCS

Respondents/Defendants failed to ensure compliance with, Medicaid laws that require the

provision of medical care, including emergency medical care, with reasonable promptness, in

violation of 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8) by failing to ensure the immediate

availability of emergency care.

66. Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful

execution of their duties to administer the Medi-Cal program in compliance with all applicable

laws and in the County Respondents/Defendants' compliance with such laws, including, without

limitation, 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8).  Fairchild has no plain, speedy, and

adequate remedy to obtain Respondents/Defendants' compliance with the laws other than the

relief sought by this Petition.

**Second Cause of Action**

Writ of Mandate under California Code of Civil Procedure § 1085

Petitioner against All Respondents

(To Compel Compliance with Section 504 of the Rehabilitation Act, the Americans with

Disabilities Act and California Welfare and Institutions Code § 11135 [discrimination on the basis

of mental disability])

66. Fairchild realleges and incorporates by reference each and every allegation

contained in the above paragraphs and in paragraphs 79-84 as though fully set forth herein.

67. Respondents/Defendants implement the Medi-Cal specialty mental health services

program, which is funded by federal and state government funds.  In addition,

Respondents/Defendants are public entities under the ADA.

68. Fairchild treats Medi-Cal and indigent patients who present with mental health

conditions that are a result of their mental health disabilities.  Due to staff and capacity limitations,

Fairchild cannot, and is not required to, provide all medically necessary specialty mental health

services to these patients.  However, Respondents/Defendants bear the legal responsibility to

ensure all Medi-Cal and indigent patients have equal access to all covered health care services,

including specialty mental health services.  Respondents/Defendants fail to ensure that patients

1   with mental health disabilities who present to Fairchild for care have equal access to their health

2   care programs in the County of Siskiyou.  Specifically, these patients face long waits to access

3   emergency care for their mental health conditions that patients with physical health conditions do

4   not face, due to the manner in which the Respondents/Defendants have implemented the specialty

5   mental health program.

6          69.    For example, and without limitation, the County Respondents/Defendants do not

7   have a network of hospitals in Siskiyou County or its proximity to treat eligible Medi-Cal

8   beneficiaries with emergency-level psychiatric conditions, and the DHCS

9   Respondents/Defendants have failed to enforce such requirements on the County

10  Respondents/Defendants.  By contrast, on information and belief, Fairchild maintains that these

11  same Medi-Cal beneficiaries who lack access to emergency-level psychiatric conditions but who

12  are enrolled in Partnership Health Plan have immediate access to emergency care for physical

13  health conditions.

14         70.    Likewise, the County Respondents/Defendants decline any responsibility to cover

15  and pay for post-stabilization services associated with mental health disabilities/conditions, when

16  such services are covered for physical health conditions.

17         71.    The DHCS Respondents/Defendants have established payment rates for acute

18  psychiatric hospital services in a manner completely different than reimbursement for physical

19  health services rendered by hospitals.  For physical health services, the DHCS establishes rates

20  based on an "all patients refined diagnosis related group" ("APR-DRG") methodology that is

21  based on the resource utilization for a particular patient and that takes into account additional costs

22  that a hospital may incur for specific, higher cost inpatient stays.  By contrast, the DHCS

23  establishes rates per diem for acute psychiatric hospital services that are unrelated to the severity

24  of the patient or the costs incurred by a hospital to treat a patient with mental health

25  disabilities/conditions.  The impact of this difference in methodology is particularly stark when

26  reviewing the resulting payment rates.  Fairchild is informed and believes that the resulting rates

27  for psychiatric hospital services per diem are less than half the rates available for physical health

28  hospital services per diem.  Fairchild is further informed and believes that these result in these

differential payment methodologies has resulted in a statewide shortage of psychiatric inpatient services in California, which, in turn, contribute to the delays in treatment to patients with mental disabilities/conditions presenting at Fairchild, resulting in discrimination against Fairchild's patients on the basis of their mental health disabilities/conditions.

72.     Fairchild is informed and believes that the County Respondents/Defendants have not sought to provide emergency psychiatric services to Medi-Cal and indigent patients in Siskiyou County nor have they offered additional reimbursement to ensure access to emergency psychiatric services for these individuals.  By so doing, the County Respondents/Defendants have failed to ensure that these individuals with mental health disabilities/conditions have equal access to federally/state funded and County-operated programs.

73.     Fairchild's patients are otherwise qualified individuals with a disability but, solely by reason of the disability, were excluded from the participation in, and denied the benefits of the Medi-Cal program and the County's indigent programs, and were subjected to discrimination on the basis of their disability. Specifically, if the patients had not had mental disabilities that caused their emergency conditions, they would have had immediate access to treatment for their emergency conditions.  However, the County Respondents/Defendants and the DHCS Respondents/Defendants failed to ensure that the patients with mental disabilities had equal access to health care services under the Medi-Cal program.  These acts violate section 504 of the Rehabilitation Act, the ADA and Welfare and Institutions Code section 11135.

74.     Specifically, on the basis of mental disability, the County Respondents/Defendants have: (1) denied the subject patients the opportunity to participate in or benefit from Medi-Cal-covered health care services; (2) failed to afford the patients with mental disabilities an opportunity to receive emergency services that is equal to patients without mental disabilities; (3) failed to provide patients with mental disabilities with coverage for mental health conditions that is as effective as the coverage for physical health conditions; (4) limited the Medi-Cal benefits available to persons with mental health conditions; and (5) imposed additional restrictions on mental health benefits not imposed on physical health benefits.

75.     Moreover, the DHCS Respondents/Defendants failed to ensure that the County Respondents/Defendants implemented the county mental health plan consistent with section 504 of the Rehabilitation Act, the ADA and California Welfare and Institutions Code section 11135. The DHCS also implemented the specialty mental health services program in a manner that denies individuals with mental disabilities equal access to health care services under the Medi-Cal program.

76.     The integration mandate under the ADA and enforceable under California Welfare and Institutions Code section 11135 requires the County Respondents/Defendants to administer the services in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  However, the County Respondents/Defendants have brought or failed to move patients with mental disabilities from Fairchild's emergency department.  Fairchild's emergency department is not a setting "appropriate to the needs" of these patients because Fairchild is unable to provide behavioral health treatment to these individuals; it is not an integrated setting as it is an institution without the capability to provide psychiatric services.  Indeed, many of these patients could receive crisis management or medical management in a non-facility outpatient setting like a crisis stabilization unit or even a sobering center.  For others, the most integrated setting appropriate to their needs may be a psychiatric hospital where they may receive psychiatric treatment of their behavioral health conditions.  The failure by the County Respondents/Defendants to ensure that patients with mental disabilities are treated in the most integrated setting appropriate to their needs, whether a community, outpatient or acute psychiatric hospital, fails to comply with the integration mandate.

77.     Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful execution of their duty to administer the Medi-Cal program in compliance with all applicable laws and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain, speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the relief sought by this Petition.

/ / /

/ / /

**Third Cause of Action**

Writ of Mandate under California Code of Civil Procedure § 1085

Petitioner against All Respondents

(To Compel Compliance with 42 U.S.C. § 1396u-2(b)(8) [mental health parity])

78.    Fairchild realleges and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

79.    The DHCS Respondents/Defendants are responsible for implementing the Medi-Cal program, through which DHCS has contracted with the County for the provision of SMHS. The DHCS Respondents/Defendants, through the Medi-Cal program, also provide coverage for physical medical services.

80.    For the most part, the regulations adopted by DHCS regarding specialty mental health services have not been updated to reflect the massive changes in the Medicaid program since the passage of the MHPAEA in 2008 or the Affordable Care Act in 2010.

81.    There are significant differences in the ways that the physical health and behavioral health programs are structured for Medi-Cal beneficiaries.  These differences detrimentally impact the access by beneficiaries to health care services.  For example and without limitation –

- Physical health plans receive payment from the State based on the number of beneficiaries assigned to the plans, based on an actuarial equivalent of what the State would have spent on the services that the enrollees are projected to utilize.  (42 C.F.R. § 438.4.)  By contrast, Petitioner and Plaintiff is informed and believes that counties fund their specialty mental health obligations from various funding sources, including realignment funds and Mental Health Services Act funds derived from taxes on personal income exceeding $1 million.  In other words, county mental health plans do not receive funding from the State related to the number of beneficiaries they are expected to serve nor the cost of the services they are expected to provide or arrange. This disparity in funding reduces the ability of county mental health plans to cover all mental health needs of their residents as compared to the physical health plans.  This reduces access to mental health services by Medi-Cal beneficiaries at a level unequal to

access to physical health services.

- The State imposes a medical loss ratio of 85% on Medi-Cal physical health plans to ensure that those plans expend at least 85% of the capitation dollars received on health care services.  (42 C.F.R. § 438.8.)  Petitioner and Plaintiff believes that there is no equivalent medical-loss ratio imposed on county mental health plans to ensure that the funding that counties receive is expended on specialty mental health services.  This reduces access to mental health services by Medi-Cal beneficiaries at a level unequal to access to physical health services.

- The State clearly requires physical health plans to pay for post-stabilization services rendered for physical health conditions.  However, by its amendment to contracts with county mental health plans, the State has led county mental health plans to believe that they are exempt from covering post-stabilization services pursuant to 42 C.F.R. section 438.114(e), contrary to California Code of Regulations, title 9, section 1810.345(e).  This results in unequal coverage for post-stabilization services between physical health and behavioral health plans, such as the payments for services sought by Fairchild through this First Amended Petition and Complaint.

- Physical health Medi-Cal plans are obligated to cover a full spectrum of medically necessary services for physical health conditions.  However, the DHCS Respondents/Defendants have failed to ensure that the specialty mental health program covers a full spectrum of medically necessary services for mental health conditions.  For example, physical health Medi-Cal plans cover mental health services for mild to moderate acuity mental health conditions, including those which may be provided by a primary care physician.  By contrast, county mental health plans only cover specialty mental health services when: (1) the patient meets one of the diagnoses described in California Code of Regulations, title 9, sections 1820.205, 1830.205, or 1830.210; (2) the services fall into specific categories of services described in California Code of Regulations, title 9, section 1810.247; and (3) subject to additional certification requirements not applicable to the physical health managed care program.  The DHCS

Respondents/Defendants have not ensured coverage for services for severe mental health conditions that do not meet the strict diagnoses in California Code of Regulations, title 9, sections 1820.205, 1830.205, or 1830.210, or that do not meet the defined categories in California Code of Regulations, title 9, section 1810.247, or that are provided by a non-certified provider. In these circumstances, the Medi-Cal coverage of mental health services is more limited than the coverage of physical health services.

- As discussed in paragraph 71, the DHCS Respondents/Defendants have established a payment methodology for psychiatric hospital care that creates financial disincentives for hospitals to treat individuals with mental health conditions. By so doing, the DHCS Respondents/Defendants have limited access to acute-level mental health services for Medi-Cal beneficiaries as compared to access to acute-level physical health services.

- Physical health plans are obligated to pay non-contracted providers for care in specified circumstances, such as emergency and post-stabilization services, out-of-area urgent care, and care rendered out-of-network when the services are not available in-network. The DHCS has failed to ensure that county mental health plans pay non-contracted providers for equivalent types of care, such as the services provided by Fairchild to patients for whom the County Respondents/Defendants are financially liable.

82.    These differences in the Medi-Cal physical health programs and mental health programs result in limitations on access to mental health services by Fairchild's patients. The County Respondents/Defendants' delay and denial of meaningful access to SMHS to such patients is unequal to the manner and limitations on the provision of physical medical services under Medi-Cal. The County Respondents/Defendants and the DHCS Respondents/Defendants failed to ensure parity between the mental health care services and physical health care services that are provided through the Medi-Cal program.

83.    For illustration purposes, the average wait time for Medi-Cal enrollees requiring emergency-level mental health care at Fairchild was over 20 hours, due to the failure of the County Respondents/Defendants to provide or arrange for emergency services. By contrast,

1  patients with emergency medical conditions (like a heart attack) will access emergency services at

2  Fairchild or be transferred to a hospital offering a higher level of emergency care within thirty

3  minutes.  The DHCS Respondents/Defendants' failure to ensure parity between the physical health

4  and mental health programs and failure to require the County Respondents/Defendants to either

5  provide or arrange for emergency mental health services has resulted in this disparity in access to

6  emergency services.

7        84.    Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful

8  execution of their duty to administer the Medi-Cal program in compliance with all applicable laws

9  and in the County Respondents/Defendants' compliance with such laws.  As a result of the DHCS

10  Respondents/Defendants' and the County Respondents/Defendants' failure to provide SMHS in

11  parity with their provision of physical medical services under Medi-Cal, Fairchild has not received

12  reimbursement for providing SMHS within its capabilities, has been forced to divert staff and

13  resources while waiting for the patients to be transferred or discharged, and has been forced to

14  incur costs related to keeping these patients in Fairchild's emergency department.  Fairchild has no

15  plain, speedy, and adequate remedy to obtain Respondents' compliance with the laws other than

16  the relief sought by this Petition.

17  **Fourth Cause of Action**

18  Writ of Mandate under California Code of Civil Procedure § 1085

19  Petitioner against All Respondents

20  (To Compel Compliance with 42 U.S.C. § 1396u-2(b)(2), 42 C.F.R. § 438.114 and Cal. Code

21  Regs., tit. 9, § 1810.345(e) [coverage of post-stabilization services])

22        85.    Fairchild realleges and incorporates by reference each and every allegation

23  contained in the above paragraphs as though fully set forth herein.

24        86.    The County Respondents/Defendants are responsible for County patients who

25  present to Fairchild with emergency medical conditions that require SMHS and medically-

26  necessary post-stabilization services.  Such patients are Medi-Cal beneficiaries entitled to

27  coverage under the County's obligations as a county Medi-Cal mental health plan.  The County

28  Respondents/Defendants failed to comply with, and the DHCS Respondents/Defendants failed to

1 ensure compliance with, Medicaid laws that require the provision and coverage of timely

2 emergency medical care and post-stabilization services in violation of 42 U.S.C. section 1396u-

3 2(b)(2), 42 C.F.R. section 438.114, and California Code of Regulations, title 9, section

4 1810.345(e).

5    87.    Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful

6 execution of their duty to administer the Medi-Cal program in compliance with all applicable laws

7 and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain,

8 speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the

9 relief sought by this Petition.

10                        **Fifth Cause of Action**

11            Writ of Mandate under California Code of Civil Procedure § 1085

12                    Petitioner against All Respondents

13            (Violation of 9 C.C.R. § 1810.405 [provision of SMHS])

14    88.    Fairchild realleges and incorporates by reference each and every allegation

15 contained in the above paragraphs as though fully set forth herein.

16    89.    The County Respondents/Defendants are responsible for County patients who

17 present to Fairchild with emergency medical conditions that require SMHS and medically-

18 necessary post-stabilization services.  Such patients are Medi-Cal beneficiaries entitled to

19 coverage under the County's obligations as a county Medi-Cal mental health plan.  The County

20 Respondents/Defendants failed to comply with, and the DHCS Respondents/Defendants failed to

21 ensure compliance with, California state law that requires county mental health plans to assure that

22 all Medi-Ca beneficiaries have meaningful access to SMHS 24 hours a day, seven days a week in

23 violation of 9 C.C.R. § 1810.405.

24    90.    Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful

25 execution of their duty to administer the Medi-Cal program in compliance with all applicable laws

26 and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain,

27 speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the

28 relief sought by this Petition.

**Sixth Cause of Action**

Writ of Mandate under California Code of Civil Procedure § 1085

Petitioner against All Respondents

(To Compel Compliance with California Welfare & Institutions Code § 14197 and 42 C.F.R. § 438.206(b)(4) [adequate network])

91.     Fairchild realleges and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

92.     The County Respondents/Defendants are responsible for County patients who present to Fairchild with emergency medical conditions that require SMHS and medically-necessary post-stabilization services.  Such patients are Medi-Cal beneficiaries entitled to coverage under the County's obligations as a county Medi-Cal mental health plan.  The County Respondents/Defendants failed to comply with, and the DHCS Respondents/Defendants failed to ensure compliance with, California state law that requires county mental health plans to maintain an adequate network of providers that can provide meaningful access to covered services in violation of California Welfare and Institutions Code § 14197.  The County Respondents/Defendants also failed to comply with, and the DHCS Respondents/Defendants also failed to ensure compliance with, federal law that requires county mental health plans to maintain timely coverage of covered services out of network for as long as the plan's provider network is unable to provide them, in violation of 42 C.F.R. § 438.206(b)(4).

93.     Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful execution of their duty to administer the Medi-Cal program in compliance with all applicable laws and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain, speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the relief sought by this Petition.

/ / /

/ / /

/ / /

/ / /

**Seventh Cause of Action**

Writ of Mandate under California Code of Civil Procedure § 1085

Petitioner against All Respondents

(To Compel Compliance with 9 C.C.R. § 1810.415(b) [coordination of care])

94.     Fairchild realleges and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

95.     The County Respondents/Defendants are responsible for County patients who present to Fairchild with emergency medical conditions that require SMHS and medically-necessary post-stabilization services.  Such patients are Medi-Cal beneficiaries entitled to coverage under the County's obligations as a county Medi-Cal mental health plan.  The County Respondents/Defendants failed to comply with, and the DHCS Respondents/Defendants failed to ensure compliance with, California state law that requires county mental health plans to arrange appropriate management of a beneficiary's care with necessary SMHS providers in violation of 9 C.C.R. § 1810.415(b).

96.     Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful execution of their duty to administer the Medi-Cal program in compliance with all applicable laws and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain, speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the relief sought by this Petition.

**Eighth Cause of Action**

Writ of Mandate under California Code of Civil Procedure § 1085

Petitioner against County Respondents/Defendants

(To Compel Compliance with California Welfare & Institutions Code § 17000 [care of indigent persons])

97.     Fairchild realleges and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

98.     The County Respondents/Defendants are responsible for County patients who present to Fairchild with emergency medical conditions that require SMHS and medically-

31

1  necessary post-stabilization services.  Such patients are indigent persons within the meaning of

2  California Welfare and Institutions Code section 17000, who cannot obtain SMHS services from

3  any other source.  The County Respondents/Defendants failed to provide meaningful access to

4  medically necessary medical services to such persons in violation of California Welfare and

5  Institutions Code section 17000.  Moreover, the County Respondents/Defendants' refusal to

6  reimburse Fairchild for costs incurred for services rendered to indigent patients who present to

7  Fairchild with emergency mental health conditions violates California Welfare and Institutions

8  Code section 17000.

9      99.    Fairchild is beneficially interested in the County Respondents/Defendants'

10  compliance with its legal obligation to provide medical care for indigent persons.  Fairchild has no

11  plain, speedy, and adequate remedy to obtain the County's compliance with California Welfare

12  and Institutions Code section 17000 other than the relief sought by this Petition.

13                          **Ninth Cause of Action**

14                          42 U.S.C. § 1983

15            Petitioner against Respondents Gilbert, Collard and County

16      (Violation of 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(a)(8) [failure to provide care with

17                          reasonable promptness])

18      100.   Fairchild realleges and incorporates by reference each and every allegation

19  contained in the above paragraphs as though fully set forth herein.

20      101.   Fairchild asserts standing on behalf of its patients who presented with emergency

21  medical conditions that require SMHS and medically-necessary post-stabilization services.  Such

22  patients are Medi-Cal enrollees entitled to covered SMHS provided by Respondents.  Respondents

23  owed such Medi-Cal enrollees duties and obligations provided under federal law.  Fairchild asserts

24  the enforceable rights of these enrollees under federal law to receive emergency and post-

25  stabilization services with reasonable promptness pursuant to 42 U.S.C. sections 1396a(a)(10)(A)

26  and 1396a(a)(8).

27      102.   Despite the well-established and well-defined duties to Medi-Cal beneficiaries,

28  under the color of state law, Respondents Gilbert, Collard and County, pursuant to official

                                    32

1  municipality policy, custom, or action, deprived Fairchild's patients of their enforceable rights

2  under federal law to receive emergency and post-stabilization services with reasonable promptness

3  pursuant to 42 U.S.C. sections 1396a(a)(10)(A) and 1396a(a)(8).

4                                 **Tenth Cause of Action**

5                                    42 U.S.C. § 1983

6                  Petitioner against Respondents Gilbert, Collard and County

7  (Violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act

8                    [discrimination on the basis of mental disability])

9        103.    Fairchild realleges and incorporates by reference each and every allegation

10 contained in the above paragraphs as though fully set forth herein.

11       104.    Fairchild asserts standing on behalf of its patients who presented with mental health

12 disabilities requiring emergency SMHS and medically-necessary post-stabilization services.  Such

13 patients are otherwise qualified individuals with a mental disability, but, solely by reason of the

14 disability, were excluded from the participation in, and denied the benefits of the Medi-Cal

15 program and the County's indigent programs, and were subjected to discrimination on the basis of

16 their disability.  Fairchild asserts the enforceable rights of these enrollees under federal law to be

17 free from discrimination on the basis of their disabilities in the provision of Medi-Cal services

18 under section 504 of the Rehabilitation Act and the ADA.

19       105.    Despite the well-established and well-defined duties to Medi-Cal beneficiaries,

20 under the color of state law, Respondents Gilbert, Collard and County, pursuant to official

21 municipality policy, custom, or action, deprived Fairchild's patients of their enforceable rights

22 under federal law to be free from discrimination on the basis of their disabilities in the provision of

23 Medi-Cal services under section 504 of the Rehabilitation Act.

24                              **Eleventh Cause of Action**

25                                    42 U.S.C. § 1983

26                  Petitioner against Respondents Gilbert, Collard and County

27                  (Violation of 42 U.S.C. § 1396u-2(b)(8) [mental health parity])

28       106.    Fairchild realleges and incorporates by reference each and every allegation

1    contained in the above paragraphs as though fully set forth herein.

2    107.    Fairchild asserts standing on behalf of its patients who presented with emergency

3    medical conditions that require SMHS and medically-necessary post-stabilization services.  Such

4    patients are Medi-Cal enrollees entitled to covered SMHS provided by Respondents.  Respondents

5    owed such Medi-Cal enrollees duties and obligations provided under federal law.  Fairchild asserts

6    the enforceable rights of these enrollees under federal law to have the Medi-Cal program provide

7    parity between physical health and behavioral health services pursuant to 42 U.S.C. section

8    1396u-2(b)(8).

9    108.    Despite the well-established and well-defined duties to Medi-Cal beneficiaries,

10    under the color of state law, Respondents Gilbert, Collard and County, pursuant to official

11    municipality policy, custom, or action, deprived Fairchild's patients of their enforceable rights

12    under federal law to have the Medi-Cal program provide parity between physical health and

13    behavioral health services pursuant to 42 U.S.C. section 1396u-2(b)(8).

14    **Twelfth Cause of Action**

15    42 U.S.C. § 1983

16    Petitioner against Respondents Gilbert, Collard and County

17    (Violation of 42 U.S.C. § 1396u-2(b)(2) [coverage and access to emergency and post-stabilization

18    services])

19    109.    Fairchild realleges and incorporates by reference each and every allegation

20    contained in the above paragraphs as though fully set forth herein.

21    110.    Fairchild asserts standing on behalf of its patients who presented with emergency

22    medical conditions that require SMHS and medically-necessary post-stabilization services.  Such

23    patients are Medi-Cal enrollees entitled to covered SMHS provided by Respondents.  Respondents

24    owed such Medi-Cal enrollees duties and obligations provided under federal law.  Fairchild asserts

25    the enforceable rights of these enrollees under federal law to have coverage and access to

26    emergency and post-stabilization care pursuant to 42 U.S.C. § 1396u-2(b)(2).

27    111.    Despite the well-established and well-defined duties to Medi-Cal beneficiaries,

28    under the color of state law, Respondents Gilbert, Collard and County, pursuant to official

municipality policy, custom, or action, deprived Fairchild's patients of their enforceable rights under federal law to have coverage and access to emergency and post-stabilization care pursuant to 42 U.S.C. § 1396u-2(b)(2).

**Thirteenth Cause of Action**

Writ of Mandate under Code of Civil Procedure § 1085

Petitioner against all Respondents/Defendants

(To Compel Compliance with 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(43)(C), 1396d(b)(4)(B) [Early and Periodic Screening, Diagnostic and Treatment ("EPSDT")])

112.    Respondents/Defendants must provide necessary health care and treatment "to correct or ameliorate… mental illnesses or conditions" for eligible Medi-Cal beneficiaries under the age of 21, including Early and Periodic Screening, Diagnostic and Treatment ("EPDST") services.  Respondents/Defendants must ensure that the EPDST services provided are reasonably effective.

113.    Among the patients described in paragraphs 49 to 52 are Medi-Cal beneficiaries under the age of 21.  Respondents/Defendants fail to provide necessary health care and treatment "to correct or ameliorate" the "mental illnesses or conditions" for these individuals.  For example, in 2018, at least three Medi-Cal enrollees under the age of 21 who presented at Fairchild with emergency-level mental health conditions waited over 24 hours to be discharged and/or access SMHS.

114.    The County Respondents/Defendants' failure to provide or arrange for treatment "to correct or ameliorate" the "mental illnesses or conditions" for these young individuals and the DHCS Respondents/Defendants' failure to ensure the provision of such services for these young individuals violates the EPSDT requirements at 42 U.S.C. sections 1396a(a)(10), 1396a(a)(43)(C), 1396d(b)(4)(B).

115.    Fairchild is beneficially interested in the DHCS Respondents/Defendants' faithful execution of their duty to administer the Medi-Cal program in compliance with all applicable laws and in the County Respondents/Defendants' compliance with such laws.  Fairchild has no plain,

1  speedy, and adequate remedy to obtain Respondents' compliance with the laws other than the

2  relief sought by this Petition.

3                              **Fourteenth Cause of Action**

4                                   42 U.S.C. § 1983

5                  Petitioner against Respondents Gilbert, Collard and County

6      (Violation of 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(43)(C), 1396d(b)(4)(B) [EPSDT])

7         116.    Fairchild realleges and incorporates by reference each and every allegation

8  contained in the above paragraphs as though fully set forth herein.

9         117.    Fairchild asserts standing on behalf of its patients who presented with emergency

10  medical conditions that require SMHS and medically-necessary post-stabilization services.  Such

11  patients are Medi-Cal enrollees entitled to covered SMHS provided by Respondents.  Respondents

12  owed such Medi-Cal enrollees duties and obligations provided under federal law.  Fairchild asserts

13  the enforceable rights of its patients under the age of 21 to EPSDT such as mental health

14  treatment.

15         118.    Despite the well-established and well-defined duties to Medi-Cal beneficiaries,

16  under the color of state law, Respondents Gilbert, Collard and County, pursuant to official

17  municipality policy, custom, or action, deprived Fairchild's patients of their enforceable rights

18  under federal law to access EPSDT services.

19                              **Fifteenth Cause of Action**

20                  Writ of Mandate under Code of Civil Procedure § 1085

21                  Petitioner against County Respondents/Defendants

22      (To Compel Compliance with Lanterman-Petris-Short Act [California Welfare & Institutions

23                                Code § 5150, et seq.])

24         119.    California Welfare and Institutions Code section 5150, et seq. authorize the County

25  Respondents/Defendants or other designated individuals to take or cause to be taken into custody

26  an individual who, as a result of a mental health disorder, is a danger to others, or to himself or

27  herself, or gravely disabled, for a period up to 72 hours for the purpose of evaluating and treating

28  the underlying mental health condition.  The County Respondents/Defendants or their designees

1   take or cause to be taken individuals into custody pursuant to such authority and then transport

2   those patients to Fairchild.  The County Respondents/Defendants sometimes authorize additional

3   72-hour holds for patients who are not discharged or transferred within 72 hours of the initial

4   detainment.  For example, in 2018, one patient at Fairchild who the County had certified for a hold

5   under Welfare and Institutions Code section 5150 remained at Fairchild without the County

6   providing therapy to treat her mental health conditions for more than 72 hours.  During her stay,

7   officials from the County re-certified the individual's hold under Welfare and institutions Code

8   section 5150 to extend past 72 hours.

9        120.    California Welfare and Institutions Code sections 5150, et seq. do not authorize the

10  transport of patients under custody to a non-designated facility; nor does it authorize "holding"

11  patients at a non-designated facility without mental health treatment (e.g., psychiatric care,

12  therapy, medical management, etc.); nor do its provisions permitting involuntary holds for "up to

13  72 hours" permit successive 72 hour holds where the County Respondents/Defendants fail to

14  effectuate transport to a designated facility capable to treat the mental health condition.

15       121.    The County Respondents/Defendants violate California Welfare and Institutions

16  Code section 5150, et seq. by: (1) transporting or permitting the transport of persons detained

17  under the authority of California Welfare and Institutions Code section 5150 to Fairchild, which is

18  not a designated and approve facility to provide evaluation and treatment; (2) failing to provide or

19  arrange for treatment to those individuals' mental health disorders; and (3) issuing successive

20  holds under California Welfare and Institutions Code section 5150 at a non-designated facility

21  without treating the individuals' mental health disorders.

22       122.    Fairchild is beneficially interested in the County Respondents/Defendants'

23  compliance with California Welfare and Institutions Code section 5150, et seq., to ensure that

24  persons detained under that section are treated for their mental health disorders.  Fairchild has no

25  plain, speedy, and adequate remedy to obtain Respondents' compliance with the laws other than

26  the relief sought by this Petition.

27  / / /

28  / / /

**Sixteenth Cause of Action**

Breach of Contract

Petitioner against Respondent County of Siskiyou

123.    Fairchild realleges and incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth herein.

124.    At all times relevant, the County Respondents/Defendants were aware that it or other officials identified in California Welfare and Institutions Code section 5150 bring patients, including indigent and Medi-Cal beneficiaries who the County or its designee have determined have severe mental health diagnoses and are a danger to themselves, to Fairchild.  In fact, the County Respondents/Defendants publicly instructed its citizens to seek treatment at Fairchild if they were experiencing a behavioral health crisis.

125.    Upon stabilization of any Medi-Cal or indigent patient's physical medical condition and upon determination by the treating physician that the patient can be safely transported, Fairchild provides express written notice to the Respondent County of Siskiyou.

126.    Such express written notice includes, without limitation, that the specifically identified Medi-Cal or indigent patient: (a) has been deemed by the treating physician to be stable such that the patient could be safely transferred to another facility; (b) requires SMHS; (c) requires continued post-stabilization services to maintain the stabilized condition; and (d) continues to receive post-stabilization services at Fairchild.

127.    For each Medi-Cal or indigent patient whose claim is at issue herein, such express written notice also, without limitation: (a) requested that the County transfer Medi-Cal or indigent patient to a facility to receive SMHS; and (b) offered, as an alternative, to continue to render required post-stabilization maintenance services for that Medi-Cal or indigent patient at Fairchild's standard full billed charges, which are the reasonable value of those services ("Fairchild's Offer").

128.    For each Medi-Cal or indigent patient whose claim is at issue herein, the Respondent County of Siskiyou knew of Fairchild's Offer.

129.    Notwithstanding its knowledge of the Fairchild Offer, the Respondent County of

1  Siskiyou took no steps to transport any of the Medi-Cal or indigent patient whose claim is at issue

2  herein to another Facility.  Instead, the Respondent County of Siskiyou knowingly, authorized,

3  instructed, and or permitted each of the Medi-Cal or indigent patient whose claim is at issue herein

4  to receive required post-stabilization maintenance services for that Medi-Cal or indigent patient at

5  Fairchild's standard full billed charges, which are the reasonable value of those services.

6        130.    Fairchild submitted claims for payment to the Respondent County of Siskiyou.

7  These claims included charges for the costs incurred by Fairchild performing the services

8  described in the Fairchild Offer.  Fairchild would not have incurred those costs had the

9  Respondent County of Siskiyou met its various legal obligations discussed above to provider or

10  arrange for treatment for the patients' mental health conditions.

11        131.    The conduct between Fairchild and the Respondent County of Siskiyou and all the

12  surrounding circumstances created an implied-in-fact contract.

13        132.    Fairchild has demanded that the Respondent County of Siskiyou pay for the

14  services described in the Fairchild Offer and has sent claim information to the Respondent County

15  of Siskiyou for processing and payment.

16        133.    Further, Fairchild has demanded payment from the Respondent County of Siskiyou

17  on numerous occasions and has objected to the Respondent County of Siskiyou's unilateral

18  decision to not pay Fairchild for the services described in the Fairchild Offer.

19        134.    As a direct and proximate result of the Respondent County of Siskiyou's breaches,

20  Fairchild has been damaged in an amount to be proved at trial, plus applicable statutory interest.

21  **DECLARATORY RELIEF**

22        135.    A real and immediate dispute exists between Petitioner/Plaintiff and

23  Respondents/Defendants regarding the rights of Medi-Cal beneficiaries and indigent persons in the

24  County of Siskiyou, and Respondents/Defendants' duties owed to such individuals, who are

25  presented to Fairchild's hospital with emergency mental health conditions requiring SMHS.

26  Respondents/Defendants' policies, actions, and inactions have resulted and will result in

27  irreparable injury to Fairchild and its Medi-Cal and indigent patients.

28        136.    An actual controversy exists between Fairchild and Respondents/Defendants in that

1  Respondents/Defendants, their officers, agents, representatives, and employees, have engaged in

2  the unlawful acts alleged herein and intend to continue to do so.  Fairchild claims that these acts

3  are contrary to law and seeks a declaration of its rights with regard to this controversy.

4      **WHEREFORE,** Petitioner prays that:

5      1.    A writ of mandate be issued pursuant to California Code of Civil Procedure § 1085

6  ordering that:

7      a.    The County Respondents/Defendants provide or arrange for SMHS to Medi-Cal

8  beneficiaries in Siskiyou County with reasonable promptness pursuant to 42 U.S.C. §§

9  1396a(a)(10)(A) and 1396a(a)(8), including immediate access to medically necessary

10 emergency/urgent behavioral health services;

11     b.    The DHCS Respondents/Defendants ensure that the Medi-Cal beneficiaries in

12 Siskiyou County receive SMHS with reasonable promptness pursuant to 42 U.S.C. §§

13 1396a(a)(10)(A) and 1396a(a)(8), including immediate access to medically necessary

14 emergency/urgent behavioral health services;

15     c.    The County Respondents/Defendants and the DHCS Respondents/Defendants

16 provide equal opportunity to mentally disabled persons to access services under the Medi-Cal

17 program as individuals without mental disabilities, administer Medi-Cal services in the most

18 integrated setting appropriate to the needs of qualified individuals with mental disabilities, and/or

19 otherwise implement the Medi-Cal program without discrimination against individuals with

20 mental disabilities pursuant to section 504 of the Rehabilitation Act, the ADA and Welfare and

21 Institutions Code § 11135;

22     d.    The County Respondents/Defendants and the DHCS Respondents/Defendants

23 ensure that the Medi-Cal program in Siskiyou County is implemented so that the treatment

24 limitations applicable to mental health or substance use disorder benefits are no more restrictive

25 than the predominant treatment limitations applied to substantively all medical and surgical Medi-

26 Cal benefits for such beneficiaries and there are no separate treatment limitations that are

27 applicable only with respect to mental health or substance use disorder benefits, for example and

28 without limitation, by eliminating the disparities in paragraphs 81-83, *supra*;

1    e.    The County Respondents/Defendants provide and cover timely emergency and

2  post-stabilization care pursuant to 42 U.S.C. section 1396u-2(b)(2), 42 C.F.R. section 438.114,

3  and/or California Code of Regulations, title 9, section 1810.345(e) and/or 1810.405;

4    f.    The DHCS Respondents/Defendants ensure that the County

5  Respondents/Defendants provide and cover timely emergency and post-stabilization care pursuant

6  to 42 U.S.C. section 1396u-2(b)(2), 42 C.F.R. section 438.114, and/or California Code of

7  Regulations, title 9, section 1810.345(e) and/or 1810.405;

8    g.    The County Respondents/Defendants contract with sufficient service providers to

9  meet the network adequacy requirements in California Welfare and Institutions Code section

10  14197 and 42 C.F.R. section 438.206(b)(4);

11    h.    The DHCS Respondents/Defendants ensure that the County

12  Respondents/Defendants contract with sufficient service providers to meet the network adequacy

13  requirements in California Welfare and Institutions Code section 14197 and 42 C.F.R. section

14  438.206(b)(4);

15    i.    The County Respondents/Defendants appropriately manage the care of the patients

16  presenting at Fairchild to ensure access to SMHS pursuant to California Code of Regulations, title

17  9, section 1810.415(b);

18    j.    The DHCS Respondents/Defendants ensure that the County

19  Respondents/Defendants appropriately manage the care of the patients presenting at Fairchild to

20  ensure access to SMHS pursuant to California Code of Regulations, title 9, section 1810.415(b);

21    k.    The County Respondents/Defendants provide meaningful access to medically

22  necessary medical services and pay for costs incurred for services rendered by Fairchild to

23  indigent patients who present with emergency medical health conditions pursuant to California

24  Welfare and Institutions Code section 17000;

25    l.    The County Respondents/Defendants provide or arrange for treatment to Medi-Cal

26  beneficiaries under the age of 21 presenting at Fairchild to correct or ameliorate mental illnesses

27  or conditions pursuant to 42 U.S.C. sections 1396a(a)(10), 1396a(a)(43)(C), and 1396d(b)(4)(B);

28    m.    The DHCS Respondents/Defendants ensure that the County

1  Respondents/Defendants provide or arrange for treatment to Medi-Cal beneficiaries under the age

2  of 21 presenting at Fairchild to correct or ameliorate mental illnesses or conditions pursuant to 42

3  U.S.C. sections 1396a(a)(10), 1396a(a)(43)(C), and 1396d(b)(4)(B); and/or

4         n.        The County Respondents/Defendants ensure treatment for patients detained under

5  California Welfare and Institutions Code section 5150, for example (and without limitation) by

6  transporting detained individuals to designated facilities, and not Fairchild, providing or arranging

7  for non-institutional behavioral health treatment, and/or by refraining from issuing successive

8  holds under California Welfare and Institutions Code section 5150.

9         2.        Preliminary and permanent injunctions be issued, as follows:

10        a.        Prohibiting the County Respondents/Defendants from transporting patients

11  detained under California Welfare and Institutions Code section 5150 to Fairchild;

12        b.        Prohibiting the County Respondents/Defendants from directing, instructing, or

13  otherwise encouraging patients to seek crisis emergency psychiatric care at or other public

14  agencies to transport patients detained under California Welfare and Institutions Code section

15  5150 with emergency behavioral health conditions to Fairchild;

16        c.        Prohibiting the County Respondents/Defendants from refusing to provide or

17  arrange for timely behavioral health treatment to indigent and Medi-Cal patients with

18  emergency/urgent behavioral health conditions;

19        d.        Compelling the County Respondents/Defendants to provide or arrange for SMHS

20  to Medi-Cal beneficiaries in Siskiyou County with reasonable promptness pursuant to 42 U.S.C.

21  §§ 1396a(a)(10)(A) and 1396a(a)(8), including immediate access to emergency/urgent behavioral

22  health services;

23        e.        Compelling Respondent/Defendant Gilbert to ensure that the Medi-Cal

24  beneficiaries in Siskiyou County receive SMHS with reasonable promptness pursuant to 42 U.S.C.

25  §§ 1396a(a)(10)(A) and 1396a(a)(8), including immediate access to medically necessary

26  emergency/urgent behavioral health services;

27        f.        Prohibiting the County Respondents/Defendants and Respondent/Defendant Gilbert

28  from not providing equal opportunity to mentally disabled persons to access services under the

1   Medi-Cal program as individuals without mental disabilities, not administering Medi-Cal services

2   in the most integrated setting appropriate to the needs of qualified individuals with mental

3   disabilities, and/or otherwise not implementing the Medi-Cal program without discrimination

4   against individuals with mental disabilities pursuant to section 504 of the Rehabilitation Act, and

5   the ADA;

6         g.      Compelling the County Respondents/Defendants and Respondent/Defendant

7   Gilbert to ensure that the Medi-Cal program in Siskiyou County is implemented so that the

8   treatment limitations applicable to mental health or substance use disorder benefits are no more

9   restrictive than the predominant treatment limitations applied to substantively all medical and

10   surgical Medi-Cal benefits for such beneficiaries and there are no separate treatment limitations

11   that are applicable only with respect to mental health or substance use disorder benefits, for

12   example and without limitation, by eliminating the disparities in paragraphs 81-83, *supra*;

13         h.      Compelling the County Respondents/Defendants to provide and cover timely

14   emergency and post-stabilization care pursuant to 42 U.S.C. section 1396u-2(b)(2);

15         i.      Compelling Respondent/Defendant Gilbert to ensure that the County

16   Respondents/Defendants provide and cover timely emergency and post-stabilization care pursuant

17   to 42 U.S.C. section 1396u-2(b)(2);

18         j.      Compelling the County Respondents/Defendants to provide or arrange for

19   treatment to Medi-Cal beneficiaries under the age of 21 presenting at Fairchild to correct or

20   ameliorate mental illnesses or conditions pursuant to 42 U.S.C. sections 1396a(a)(10),

21   1396a(a)(43)(C), and 1396d(b)(4)(B); and

22         k.      Compelling Respondent/Defendant Gilbert to ensure that the County

23   Respondents/Defendants provide or arrange for treatment to Medi-Cal beneficiaries under the age

24   of 21 presenting at Fairchild to correct or ameliorate mental illnesses or conditions pursuant to 42

25   U.S.C. sections 1396a(a)(10), 1396a(a)(43)(C), and 1396d(b)(4)(B).

26         3.      A judgment be issued declaring that Respondents/Defendants' policies, practices,

27   and conduct as alleged herein violate the rights of Medi-Cal beneficiaries and indigent persons to

28   meaningful access to behavioral health services and the right of Fairchild to reimbursement for

providing covered services relating to such behavioral health treatment;

     4.     As to its sixteenth cause of action, general damages and interest in an amount to be proven at trial;

     5.     Fairchild be awarded its costs of suit and reasonable attorneys' fees; and

     6.     The Court order such other and further relief as it deems just and proper.

Dated: 3/11/20          ATHENE LAW, LLP

By:        /s/ Felicia Y Sze

FELICIA Y SZE

Attorneys for Siskiyou Hospital, Inc.

1

**VERIFICATION**

2  I am Chief Executive Officer of Fairchild Medical Center, the Petitioner and Plaintiff in

3 this case. I have read the foregoing First Amended Petition and Complaint and either know the

4 contents therein to be true of my own knowledge or I am informed and believe the matters therein

5 to be true and on that ground allege that the matters stated therein are true.

6  I declare under penalty of perjury under the laws of the State of California that the

7 foregoing is true and correct.

8

9  Executed this 10th day of March 2020 at Yreka, California.

10

11

12

13          Jonathon Andrus

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED PETITION FOR WRIT OF MANDATE (CCP § 1085) AND COMPLAINT